## M. P. MITCHELL *vs.* JAMES DALL.—*Dec.* 1832.

On the 25th of October, 1820, M, of *Baltimore*, sold L, of *Havre de Grace, Md.* merchandise to the amount of $395 89, at 6 months' credit. On the 3d of January, 1821, L made further purchases from M, to the amount of $552 97, at 4 mos. credit, which last sum was guarantied by D. On the 5th of May M notified D that his guaranty was due, and, on the 7th, M drew upon L for the amount of the first purchase. On the 8th L advised M, that he could not pay this draft, and wrote he presumed "before it becomes payable you will be paid the amount of it, having directed A to pay D the amount of the *first* invoice, to pay over to you. We wrote D to this effect: in two or three days he (*A*) or Mr. D will call and pay the amount of your draft." On the 10th D paid M $400, for which the latter gave a receipt, viz. " received of L through D, on account," &c. On the 16th June, D paid M $400, for which he gave another receipt, viz. " received of D for account of L," &c. The transactions between M and L were conducted by agents, who deposed at the trial, that the payments in 1821 wer ehanded to D to be applied for his security and relieve him. In an action upon this guaranty *it was held*, that if the jury believed that when the first payment of the 10th May was made, M had received L's letter of the 8th, then M was bound to apply that payment in discharge of the purchase, unless L before the payment gave different directions, or M had reason to believe he intended a different application.

It is a general rule, that a debtor on different accounts, may when he makes a payment, apply it to which account he pleases; but, if he does not at the time of payment apply it specifically to either, but makes it generally, or on account, the creditor who receives it, may apply it to which account he pleases.

The application of a payment need not be expressly directed at the time by the party paying the money, but his intention may be inferred from the circumstances of the particular case.

The mere fact that a payment was made to a creditor, having several demands upon the same debtor, with the debtor's money, through one who was the security of the debtor for one of the debts, is not a circumstance from which any inference can arise, that the debtor intended it should be applied to the debt of which such agent was the guaranty.

Where there is evidence tending to prove a controverted fact it should be left to the jury.

APPEAL from *Baltimore* County Court.

This case has been in this court before, and was reversed on the appeal of the present appellant, at June term, 1828, 2 *Harr. & Gill*, 159, and sent down with a *procedendo* to the County Court.

It was an action of *Assumpsit* instituted by the appellant against the appellee, on the 10th day of October, 1828.

The defendant pleaded *non-assumpsit*, and issue was joined.

1. At the second trial the plaintiff, to support the issue joined on his part, gave in evidence the following letter of guaranty, and the memorandum annexed to the same, both of which, it was admitted, were in the hand writing of the present defendant.

" *Baltimore*, 3d January, 1821. *Mr. M. P. Mitchell:* Sir, as Mr. *Archibald Austin*, agent of *Jacob Lewis & Co.*, wishes to obtain some goods of you, on a credit of four months, I hereby agree to guaranty the payment for the amount he may take at this time, if that will facilitate the business between you and him. Yours respectfully. *James Dall.*"

Amount for which *J. Dall* is responsible:

| | |
|---|---:|
| Goods, ½ bill of *M. P. M.* | $372 07 |
| Do. *Charles Moss's bill*, | 180 90 |
| | $552 97 |

He further gave in evidence that, on the 25th of October, 1820, he sold to *Jacob Lewis & Co.* the persons named in said guaranty, merchandise to the amount of $395 89, on a credit of 6 months, and that on the date of said guaranty, and upon the faith thereof, he supplied the said *Lewis & Co.* with additional merchandise to the amount of $552 97, and which is noted in the memorandum aforesaid, at the foot of said guarantee. He also gave in evidence that he afterwards received from said *Lewis & Co.*, by the hands of *James Dall*, the defendant, $400 on the 10th of May, 1821, and another $400 on the 16th June, 1821; and, in order to shew that the first of said sums, $400, was intended by said *Lewis & Co.* to be applied by the plaintiff, in the first instance, to the discharge of the first debt, contracted on the 25th of October, 1820, of $395 89, gave in evidence to the jury, the following letter written by *Archibald Austin*, as agent of said *Lewis & Co.*, to the plaintiff, having first

proved that said *Austin* was authorized by *Lewis & Co.* to write said letter.

"*Havre de Grace*, 8th May, 1821. *M. P. Mitchell Esq.* Sir, we regret to observe by yours of the 7th inst. that you have drawn upon us, at three days' sight, for $395 89, not having funds here at this time to meet it, but we presume before the draft becomes payable you will be paid the amount of it, having directed *Mr. John P. Austin,* whom we despatched on Saturday week to *Norfolk* for money due from the government on deliveries of stone, to pay *Mr. Dall* the amount of the first invoice, to pay over to you, on his return through *Baltimore.*

"We wrote *Mr. Dall* to this effect, but, as it would appear he has not informed you, we presume he must have been absent. As *Mr. A.* was directed to return with all possible despatch, and having intelligence of his leaving *Old Point Comfort* for *Norfolk* on Wednesday last, we have no doubt he will be in *Baltimore* in two or three days, when he or *Mr. Dall* will call and pay the amount of your draft. Very respectfully, &c. your obedient servants.

*Jacob Lewis & Co. per A. Austin.*"

For the same purpose the plaintiff further gave in evidence that, on the 7th of May, 1821, the day preceeding the date of said letter, he drew a draft on *Lewis & Co.* at three days' sight, for $395 89, being for the amount of said first debt of the 25th of October, 1820, which, not being accepted by them, was returned to the plaintiff on the 11th of the same month, and was by him lost or destroyed. And he further gave in evidence the following letter from *Lewis & Co.* written by their agent to the defendant, said letter having been exhibited by the defendant at the trial of this cause.

"*Havre de Grace,* June 13th, 1821. Dear sir,—we enclosed you on the 8th inst. $200 to pay *Mr. Mitchell;* we now have the pleasure to enclose two hundred more, which will enable you to pay the balance due him, or part to him

and *Moss* as you think best.    We hope soon to remit more. In the mean time remain respectfully yours, &c.

Jacob Lewis & Co. per A. Austin."

"*James Dall, Esq.*"

"*Dear James:* I feel a little anxious about the $200 sent you on the 8th, as we have not heard from you since—thank you to acknowledge the receipt of that and the enclosed, and let me know how you paid it, &c.    Yours affectionately.

A. Austin."

And also the following copy of a letter (having first given the defendant notice to produce the original) from the plaintiff to the defendant, together with the answer of defendant to said letter,

" 17th November, 1821.    *James Dall, Esq.* Dear sir,—as *Messrs. J. Lewis & Co.* have failed to remit me the balance of the account, and being desirous of having it settled, I hope it may not be inconvenient for you to discharge the same, a statement of which I now hand you.

M. P. Mitchell."

"*Baltimore,* Nov. 19th, 1821.    *Mr. M. P. Mitchell:* Sir, yours of *this* date came duly to hand through the post office, and I merely changed the direction thereof to that of *Jacob Lewis & Co., Havre de Grace,* hoping that it will produce a speedy attention and remittance to amount of the balance, if not, further attention on my part will be applied.

Yours respectfully.        James Dall.

He also gave in evidence that the plaintiff had sent no other letter to the defendant, in the month of November, 1821, than the letter of the 17th.

The plaintiff then proved by *A. Austin,* who was examined, under a commission, sent to *New York,* that he was agent for the firm of *Jacob Lewis & Co.,* at *Havre de Grace,* in *Maryland,* in the years 1820 and 1821.    That *Jacob Lewis & Co.* did purchase of *M. P. Mitchell,* the plaintiff, on the 25th of October, 1820, goods to the amount of $395 89, and made a further bill with the said *M. P. Mitchell,* on the 3d of January, 1821, to the amount of $552 97; the sum

of $180 90, being *Moss's* bill, being included therein; which bill of $552 97 was guarantied by *Mr. James Dall.* That *Mr. M. P. Mitchell* wrote the following letter to *J. Lewis & Co.*

"*Baltimore,* May 7th, 1821. *Messrs. J. Lewis & Co.* Gentlemen, I have this day drawn on you, at three days' sight, in favor of *J. C. Richards*, Esquire, for $395 89, amount of your purchase of 25th October last, on six months' credit. Your last purchase is also due. *M. P. Mitchell.*"

And that the same was received by *Lewis & Co.* That he presumes the original is among the papers of *Lewis & Co.* in *Havre de Grace,* as he last saw it there, but he cannot say whether it be now lost or destroyed, or not. That *Jacob Lewis & Co.* wrote a letter to *M. P. Mitchell* on the 8th of May, 1821. (*Ante.* 363.) That he was authorised to write such a letter, and did accordingly do so, in consequence of the inability of *Lewis & Co.* to meet the draft at the time. That he cannot recollect precisely what directions he gave *Mr. Dall,* but he knows that money was received by *Mr. Dall* from *Jacob Lewis & Co.* for the purpose of securing him, and being paid by him over to *M. P. Mitchell* on his claims. In answer to interrogatories, on the part of the defendant, the deponent says his impression is, that the money which was handed by him, or his order in 1821, to the defendant, was intended to be applied in the first instance, to the payment of that part of *Lewis and Co's* debt, which was warranted by the defendant. That the second and third sums, consisting of two hundred dollars each, were remitted by him, the deponent, to the defendant, and were intended to pay *M. P. Mitchell,* but were not remitted directly to him. That the first sum of four hundred dollars was paid in *Baltimore,* by *John P. Austin,* to the defendant, and deponent has no doubt, was paid to the defendant, and not to the plaintiff, to save the defendant from the responsibility of his guaranty.

The defendant then offered in evidence, the deposition of *John P. Austin,* taken under a commission issued to

*New York,* who proved that he was, during the years 1820 and 1821, agent of the firm of *Jacob Lewis & Co.* That he does not of his own knowledge, know of the purchases of goods by said *Lewis & Co.* of the plaintiffs, on the 25th of October, 1820, and 3d of January, 1821, but *Mr. Dall* informed the witness, at or about the beginning of the year 1821, that he had guarantied to said *M. P. Mitchell,* payment of the sum of $552 97, including a certain bill of one *Moss.* Deponent further stated, that in the year 1821, he handed to *Mr. James Dall,* four hundred dollars, to be applied to the payment of *Mr. Dall's* guarantee of $552 97, on account of *Jacob Lewis & Co's* indebtedness to *M. P. Mitchell,* and the witness is not able to say whether he, at that time, knew of any other indebtedness existing on the part of *Jacob Lewis & Co. to M. P. Mitchell.* That he, deponent, paid the four hundred dollars in *Baltimore,* to the defendant and not to the plaintiff, to relieve the defendant from his guaranty. He further gave in evidence the following letter, to him from the plaintiff, and which was admitted to be in the hand writing of the plaintiff, and the following receipts, also admitted to be in plaintiff's hand writing.

" *Baltimore, 5th May,* 1821. *Mr. J. Dall.* Dear sir, I think it necessary to inform you that the amount for which you have become responsible with me, for *Mr. A. Austin,* as agent for *J. Lewis & Co.* becomes due this day.

Very respectfully, &c.      *M. P. Mitchell.*"

" $400. *Baltimore,* 10th *May,* 1821. Received of *Jacob Lewis & Co.* through *James Dall,* four hundred dollars, on account.      *M. P. Mitchell.*"

" *Baltimore,* 16th *June,* 1821. Received of Mr. *James Dall* for account of *Messrs. Jacob Lewis & Co.* of *Havre de Grace,* four hundred dollars.      *M. P. Mitchell.*"

And thereupon the plaintiff, by his counsel, upon the whole of said evidence, prayed the opinion and instruction of the court to the jury, as follows:

1st. The plaintiff prays the opinion of the court to the jury, that from the evidence in the cause, they must find that *Lewis & Co.* directed the plaintiff to apply the first payment of $400, of the 10th of May, 1821, received through the defendant, and as given in evidence by him, to the discharge, in the first place, of the draft of $395 89, being the amount of the first invoice referred to in the letter of *Lewis & Co.* by their agent, *Austin*, to the plaintiff of the 8th of May, 1821.

2d. That the said letter of the 8th of May, 1821, from *Austin* as the agent of *Lewis & Co.*, if the jury believe the same to have been written by their authority, and to have been received by the plaintiff, prior to the said first payment of $400, was an application by them of said payment, to the discharge of the said draft and first invoice, and binding the plaintiff to make such application of it, unless the jury believe that, between the date of said letter and the receipt of said payment, the plaintiff received a subsequent direction from *Lewis & Co.*, or their authorized agent, for that purpose, either expressly or impliedly, to make a different application of it, and that there is no evidence in the cause, from which the jury can find any such subsequent direction.

3d. That if the jury believe that *Lewis & Co.* intended at the time said first payment was made, that it should be applied to the discharge of the said draft, the plaintiff was authorized so to apply it, no matter what might have been the intention of the defendant, at the time he handed over the money to the plaintiff, or of *John P. Austin*, from whom it had been previously received by defendant.

4th. That the plaintiff was authorized to apply said payment to the discharge of that part of the debt due by *Lewis & Co.* to him, which was first contracted, unless he believed, or had good reason to believe at the time of receiving it, that they, *Lewis & Co.*, intended to make a different application of it, and that there is no evidence in this cause that the plaintiff did so believe, or that he had good reason to believe that any such intention existed, on the part of *Lewis & Co.*

5th. That upon the whole evidence the plaintiff is entitled to recover.

But the court refused to give each and every of said opinions and instructions to the jury, except the one asked for in the *third* prayer.

The plaintiff excepted, and the verdict and judgment being against him, he appealed to this court.

The cause came on to be argued before BUCHANAN, Ch. J., EARLE, STEPHEN, and DORSEY, J.

*Johnson*, for the appellant.

As the money which the plaintiff received on the 10th of May, 1821, was the money of *Lewis & Co.* and not of *Dall*, the defendant, the former, and not the latter, had a right to direct the application, and if no application was made by *Lewis & Co.* then the right devolved upon *Mitchell*, the creditor.

The letter of May 8th, 1821, from *A. Austin*, to the plaintiff, and the draft of the plaintiff on *Lewis & Co.* for the amount of the first invoice, were not before the jury in the former cause, both having been decided by the County Court, to be inadmissible, 2 *Harr. and Gill*, 170.

Now, that letter, he contended, was the authority to *Mitchell*, to make the application to the first debt, and he was bound so to apply it. The question, of how this payment should be applied, is a question with which *Dall* has no right to interfere, it being exclusively a question between *Lewis & Co.* and the plaintiff. Nor could *John P. Austin*, who handed the money to *Dall*, control, in any way, its application. If, however, it be admitted that he could, and the intention, as proved to have been entertained by him that the payment should go in discharge of *Dall's* guaranty, would have been binding on *Mitchell*, if communicated to him, it does not appear to have been so communicated. The fact that *Dall* handed the money to *Mitchell*, is of no importance, because the letter of the 8th of May,

1821, which directed the payment to the first debt, said that *Dall* would probably hand the money.

The two payments of May and June, 1821, amount to $800, being more than *Dall's* guaranty, yet in November of the same year, in answer to a letter from the plaintiff, calling on him for the balance, instead of denying that he owed a balance, he promises to give the claim further attention, if *Lewis & Co.* did not.

That a creditor has a right to apply a payment to a debt guarantied, when he has one not so secured, he cited *Kirby vs. The Duke of Marlborough*, 2 *Maule and Selw.* 18. 3 *Stark.* 1092. *Brewer vs. Knapp*, 1 *Pick.* 337. 1 *Serg. and Low.* 202. He referred also in the argument, to *Mitchell vs. Dall*, 2 *Harr. and Gill*, 159, 173. *Mayor of Alexandria vs. Patten*, 4 *Cranch.* 320. *Gwynn vs. Whitaker*, 1 *Harr. and Johns.* 754.

*Williams*, for the appellee.

*John P. Austin* was as much the agent of *Lewis & Co.* as *Archibald*, and the agency of the former, as appears from the evidence, had a particular reference to their money transactions, and when he went to *Baltimore* with the money, he possessed all the authority of *Lewis & Co.* over the subject. Now *Austin* says that his intention, when he gave the money to *Dall*, was that he should relieve himself from his guaranty, and it is difficult to ascribe to him any other motive; nor can it be believed that *Dall* did not pay the money to *Mitchell*, for that purpose. The receipt shows that *Mitchell* did not apply the money to the old debt of $395 89, for if he had, it would have been in full of that debt, and the balance would have been applied to the guarantied debt. Why should the money have been placed in the hands of *Dall* at all, if the object had not been to relieve him from his responsibility? Upon the application of payments, he cited *Gwynn vs. Whitaker*, 1 *Harr. and Johns.* 755. The first right of application is with the debtor; if he does not do it, the creditor may, and if both omit, the applica-

tion is made by the law.   The application, whether made by debtor or creditor, is made at the *time* of payment only, though there are perhaps, modern cases establishing a different rule.   *Robert vs. Garnie*, 3 *Caine's Rep.* 14.   *Simson vs. Ingham*, 2 *B. and C.* 65.   9 *Serg. and Low.* 29.

And whether the debtor has applied a payment to one debt or another, expressly or impliedly, is a question for the jury, and this is so, whether the evidence be in writing or by parol.   *Etting vs. Bank U. S.*, 11 *Wheat.* 75.

BUCHANAN, Ch. J., delivered the opinion of the court.

This case was once before in this court, and was sent back under a *procedendo*, and it now comes up again upon a bill of exceptions taken at the trial, on the part of the appellant, containing *five* prayers, the *first* and *last* of which, can neither of them be sustained.   Not the former, because the prayer to the court was for a direction to the jury, that from the evidence they *must* find that *Lewis & Co.* directed the plaintiff to apply the first payment of $400 received through the defendant, to the discharge, in the first instance, of the draft of $395 89, which they were not bound to do, if they were not satisfied that the letter of the 8th of May, 1821, from *Archibald Austin*, the authorized agent of *Lewis & Co.* to the plaintiff, containing the direction relied upon, for the application of the money, had been received by the plaintiff, which was a matter for the jury, and could not properly have been taken from them by the court.   The court, therefore, did right in refusing to give the instruction asked for, which could not have been given without determining as well the fact, that the letter was written by the authority of *Lewis & Co.*, as, that it had been received by the plaintiff, and that would have been an usurpation of the province of the jury; nor the latter, because it was a general prayer not sanctioned by the act of 1825, ch. 117, under the construction heretofore given by this court to that act.

There is no question before us on the *third* prayer; that having been granted, and no exception taken by the defend-

ant. But we think the instructions asked for in the *second* and *fourth* prayers, should have been given.

On the 25th of October, in the year 1820, the plaintiff sold goods to *Lewis & Co.* to the amount of $395 89, on a credit of six months; and on the 3d of January, 1821, he let them have another parcel of goods, to the amount of $552 97, on a credit of four months, upon the guaranty of the defendant *Dall,* upon which guaranty this suit is founded. It appears from the evidence set out in the bill of exceptions, that on the 7th of May, 1821, both debts being then due and unpaid, the plaintiff wrote to *Lewis & Co.,* in these words: " I have this day drawn on you at three days' sight, in favor of *J. C. Richards, Esq.* for $395 89, amount of your purchase 25th of October last, on six months' credit. Your last purchase is also due. " And gave in evidence that on the same day, he drew a draft on them at three days' sight, for $395 89, the exact amount of the first debt, of the 25th October, 1820, which not being accepted, was returned to him.

He also gave in evidence a letter of the 8th of May, 1821, written for *Lewis & Co.* by *Archibald Austin,* their agent for that purpose, addressed to him saying, " we regret to observe by yours of the 7th instant, that you have drawn upon us, at three days' sight for $395 89, not having funds here at this time to meet it; but we presume before the draft becomes due, you will be paid the amount of it, having directed Mr. *John P. Austin,* whom we dispatched on Saturday week to *Norfolk,* for money due by the government on deliveries of stone, to pay *Mr. Dall* the amount of the first invioce, to pay over to you on his return through *Baltimore.* We wrote *Mr. Dall* to this effect; but as it would appear he has not informed you, we presume he must have been absent; as *Mr. Austin* was directed to return with all possible despatch; and having intelligence of his leaving *Old Point Comfort* on Wednesday last, we have no doubt he will be in *Baltimore* in a few days, when he or *Mr. Dall,* will call and pay the amount of your draft. "

It is in proof that *John P. Austin,* the person named in that letter, did put into the hands of *Dall,* the defendant, $400; and that on the 10th of May, 1821, only two days after the date of that letter, *Dall* paid over $400 to the plaintiff, and took from him a receipt in these words, " received of *Jacob Lewis & Co.,* through *James Dall,* $400 on account." And the question is, how that payment should be applied, whether in the first place, to the first debt of $395 89, the amount of the draft of the 7th May, 1821, or to the debt of $552 97, guarantied by *Dall.*

It is a general rule, that a debtor on different accounts may, when he makes a payment, apply it to which account he pleases; but if he does not at the time of payment, apply it specifically to either, but makes it generally, or on account, the creditor who receives it, may apply it to which account he pleases. And it makes no difference, though one debt be due on open account, and the other on bond, or the one on open account, and the other secured by a guaranty; in either case, the creditor may apply the unappropriated payment to which debt he chooses, and is not bound to apply it so as first to relieve the surety, but may appropriate it at his discretion, in the first instance to the open account, and that although the open account existed anterior to the bond or guaranty, and the surety in the bond if there be one, or the guaranty had no notice of it, at the time of entering into his liability.

The application of a payment, it is true, need not always be expressly directed at the time, by the party paying the money; but his intention may be inferred from the circumstances of the particular case; and a payment may be attended by circumstances demonstrating its application as clearly, as it could be demonstrated by words. As in the case put by the chief justice in *Naylor vs. Sandiford,* 7 *Wheat.* 20, of a positive refusal to pay one debt, and an acknowledgment of another, accompanied by the delivery of the sum due upon it, which would be a circumstance as fully evincing the intention of the debtor, to apply the payment to the

debt acknowledged, as it could be by an express direction, and would have the effect of an express direction to apply it to that debt, and the creditor would be bound so to apply it. But if there be no application of the payment at the time, by the debtor, either express or implied, or arising out of the nature of the transaction, the election is thrown upon the creditor, to apply it to which account he pleases.

And in the decision of the case between these parties, as formerly brought before this court, 2 *Harr. and Gill*, 159, it is laid down to be "the undoubted right of the debtor, to direct the appropriation of any money paid by him, to any debt he may think proper; and although he may not give an express direction at the time of the payment, such direction may be implied from circumstances, but if no application has been made by the debtor, either express or implied, then the creditor may apply it." And speaking of the letter of the 8th of May, 1821, from *Lewis & Co.* to the plaintiff, the rejection of which, as incompetent testimony, formed one of the grounds of appeal, it is said, "we think the letter was not only legal, but the best evidence for the purpose for which it was offered. It was the direction of the debtor to the creditor, in writing, how this payment was to be applied. It was the creditor's authority for making the application, and after the receipt of this letter, he could not have rightfully applied it in any other manner."

The purpose for which it was offered was to show, that the amount specified in the receipt of the 10th of May, 1821, was intended to be applied, in the first instance, to the discharge of the first debt of $395 89, which construction of that letter we think is undeniably correct.

The draft by the plaintiff, on *Lewis & Co.*, of the 7th of May, 1821, was for $395 89, the exact amount of the first debt of the 25th of October, 1820, and in his letter to them of the 7th of May, 1821, advising them of that draft, he informed him that it was for the amount of their purchase of the 25th October, 1820, and advised them further, that their last purchase, (the debt guarantied by *Dall* the defen-

dant,) was also due.   Here then, the two debts were clear-
ly designated, and *Lewis & Co.* advised that the draft was
on the first account, and not on the last, which was guaran-
tied by *Dall.*   With this information before them, they, in
their letter of the 8th of May, 1821, tell the plaintiff, that
they presume he will be paid the amount of the draft before
it becomes due; that they had directed *J. P. Austin*, to put
into the hands of *Dall*, the amount of the first invoice, (the
debt of the 25th of October, 1820,) to be paid over by *Dall*, to
him; that they had written to *Dall* to that effect; and that
they have no doubt *J. P. Austin*, or *Dall*, will in a few
days call and pay him the amount of his draft; which was
as clear a direction to the plaintiff, to apply the money that
should be put in *Dall's* hands by *J. P. Austin*, and by *Dall*
paid over to him, to the first debt, or that of the 25th of Oc-
tober, 1820, as could well have been given.

   And putting the letter from the plaintiff to *Lewis & Co.*,
of the 7th of May, 1821, out of the case, if the letter of the
8th of May, 1821, from *A. Austin* as their agent, was writ-
ten by their authority, and received by the plaintiff prior
to the first payment of $400, on the 10th of May, 1821, it
was an application by them, binding on the plaintiff, of that
payment to the discharge of the draft, and first debt of the
25th of October, 1820, unless, between the date of that letter
and the receipt of the payment, he received a subsequent
direction, either express or implied, from them, or their
authorised agent for that purpose, to make a different appli-
cation of it.   And no evidence is perceived in the record
showing or tending to show, any such subsequent direc-
tion.

   *Archibald Austin*, who as the agent for that purpose, of
*Lewis & Co.* wrote the letter of the 8th May, 1821, direct-
ing the application of the money, which was to be handed
over by *Dall* to the plaintiff, no where so much as intimates
that either with, or without the authority of *Lewis & Co.*
he ever gave to the plaintiff, any other directions, express
or implied.   And whatever his own private views, not

communicated to the plaintiff may have been, his letter disclosing the intention and views of his employers, speaks for itself, and there is not a word of proof in the record, that they ever gave to the plaintiff any other directions in any way. Nor would it seem that there was time sufficient for them to do so, there having been but one intervening day between that on which the letter was written, and that on which the payment was made. And that letter was the last communication between them and the plaintiff, before the payment, of which any evidence was offered.

*John P. Austin,* who says he knew of no debt due from *Lewis & Co.* to the plaintiff, except that of which *Dall* was the guaranty, may for that reason have supposed that the money he put into *Dall's* hands, was intended to be applied to that debt. But there is not a word of proof, that he had any authority whatsoever, to make or direct such an application of it. On the contrary, the only evidence offered of his having had any authority, to place it in the hands of *Dall,* is the letter of the 8th May, 1821, which explicitly ' directs the application of it, to the draft and first account. Nor is there a word of evidence that *Dall* himself, who paid over the money to the plaintiff, made any application of it, express or implied, to the debt which he had guarantied, or intended to do so. But on the contrary, he paid it "on account" generally, as is expressly proved by the receipt he took, as for money paid by *Lewis & Co.* through him, showing that, in making the payment he acted as their agent.

And whatever might have been the effect of such a payment by him, with his own money, being a guaranty of one of the debts, yet as it was not made with his own money, but with the money of *Lewis & Co.* put into his hands for that purpose, the mere fact, that it was made through him, is not a circumstance from which any inference can arise, that they intended it should be applied to the debt of which he was the guaranty, or tending to prove such an intention. And there is not perceived to be any evidence in

the cause, that the plaintiff believed, or had any good reason to believe, that any such intention existed on the part of *Lewis* & *Co.* But their letter of the 8th May, 1820, is the only proof of what their intention was; and not only authorised, but required of the plaintiff, to apply the payment alluded to, to the first debt, no matter what might have been the intention of the defendant *Dall*, when he paid over the money to the plaintiff, or of *John P. Austin*, from whom he had previously received it. Where there is evidence tending to prove a controverted fact, it should be left to the jury; but we can perceive no evidence here, tending to prove any other application by *Lewis* & *Co.* of the first sum of $400, that was put into the hands of *Dall* by *John P. Austin*, and by him paid over to the plaintiff "on account" on the 10th May, 1821, than that which is contained in that letter.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.